K'DANI13L, J.
It seems to me that the plaintiff in error has failed to show good ground for reversing the judgment, in the refusal of the County court to continue the cause on his motion.
It is not to be denied that the fact, which the plaintiff in error, through his counsel, stated he expected to prove by the witness in court, if an opportunity was afforded him to refer to certain books to which he could not then have access, was one which might have a very material bearing on the case. Proof that the defendant in error, at, or a short time before the date of his leaving the county of Warren, had received a large sum of money, might, in the absence of proof that he had honestly paid it to his creditors, or other explanation, obviously go far towards establishing that the plaintiff in error had proper grounds for suing out his attachment. It appears, however, from the certificate of the judge, that there was no proof that the witness had been informed what he was to be examined about, or that he had been requested to examine the books; that, on its being’ demanded of the counsel of the plaintiff in error what they expected to prove by the books in respect to the amount of the money aforesaid and the date of its payment, they replied that they were not able to tell the exact day nor the exact amount; and that the counsel for ,the defendant in error thereupon expressed their willingness to admit that their client received a large estimate a few days before he left the county; which the counsel for the plaintiff in error stated they were unwilling to receive in place of the fact stated by the entry itself.
It does not appear that the plaintiff in error was present. It does not appear that he had informed his counsel of the date and amount of the payment in question ; or that he indeed knew himself what the books would disclose in respect to that matter. It is not stated that the witness had been expected to be *able to prove the exact date and amount of the payment without a reference to the books; nor is any reason suggested why there should or might have been any such expectation.
Under such circumstances, I cannot undertake to say that the County court has not properly exercised its discretion. The plaintiff in error was plainly remiss in not notifying the witness what he expected to prove by him, so that he mig’ht refer to the books if necessary; and when we take into consideration the further fact that the plaintiff in error had already been indulged with two continuances of the cause, the fair conclusion is that if he has lost the benefit of any important fact on the trial of his case, such loss is due, not to any injustice or harshness in the ruling of the court, but to his own culpable negligence.
It seems to me further, that the County court did not err in overruling the motion of the plaintiff in error to remove the case to the Circuit court of Warren county.
It must be conceded that the words of the law under which the motion was made seem to be very plain, and to leave but little room for construction. It simply declares that when any suit shall have remained pending in a County or Corporation court more than a year without being determined, such court, on the motion of any party to such suit or his representative (without notice), shall order it to be removed to the Circuit court having jurisdiction over such county or corporation. Code, ch. 174, 2 1, p. 657. The pendency of the suit for more than a year without being determined, would, giving to the words of the section their full ordinary meaning, seem to be all that is required to make it imperative upon the court to remove it. Yet it would be absurd to suppose that such could have been the real intention of the legislature. It is . manifest that in some instances a rigid enforcement ^of the law according to the letter, would conflict with other laws, and do violence to rights which we cannot for a moment suppose it was the purpose of the legislature to disturb or impair. The legislature could not have designed to vest a party with the absolute right, by his mere motion, in the midst of a trial before the jury, to arrest the progress of the cause, and have it ordered up to the Circuit court. Notwithstanding, therefore, the peremptory and unqualified languag-e of the law, the utter want of justice and propriety manifest in a strict compliance with its letter, renders it indispensable that the courts, in administering it, should put some restrictions upon its terms, and make some exceptions to a literal observance of its requirements.
It is obvious, from the very nature of the subject, that the courts must have some con *857 trol as to the time at which, in the course and order of the proceeding's in a cause, they will entertain such motions. The law embraces as well all the causes in chancery as all the cases at law which may have been depending for more than a year in the County courts. Was it the design of the legislature to give to a party the right, after the argument in a chancery cause has commenced, abitrarily, to stop the argument and remove his case to the Circuit court? Is a plaintiff, in an injunction cause, who has made an unsuccessful motion for a continuance, to be allowed, by such a step, to stay the action of the court, and avoid a dissolution of his injunction? Or, to take the case before us, has a party to a suit at law, who has made a motion to continue, which has been heard and overruled, a peremptory right to thwart and reverse the decision of the court and defeat his adversary of a trial by removing the case to the Circuit court? Illacli of these questions must, I think, be answered in the negative.
A reference to the provisions of the 1st and 2d sections *of chapter 174 of the Code, and the previous laws on the subject, renders it manifest that the true object of such legislation has been to insure to x^arties to suits in the County and Corporation courts, the speedy and impartial trial of their causes. The removal of a cause to the Circuit court, afier it shall have been pending- in a County or Corporation court for more than a year, on the motion of any one of the parties, is one of the means which the legislature has provided for attaining the ends in view. The language of the section in which this provision is made, it is true, is mandatory and not permissive; still, the nature of the subject, as I have said, forbids the idea that a court, in passing upon such a motion, has not a right to consider it in reference to the then state and condition of the cause in which it is submitted.
Upon such a reference in the present case, without instituting any further enquiry into the objects of the motion, the County court must have seen that the inevitable effect of granting it would be, not to further but to defeat the purposes of the law, and to allow the plaintiff in error to baffle and set at naught the action of the court in a matter upon which he had just before invoked its judgment, and visit his adversary with the very evil for which it was the design of the law to afford to both parties an efficient remedy. I think the motion was properly overruled.
The question next to be considered is, whether the County court erred in overruling the motion for a new trial. And in considering this question, we have to en-quire, first, what it was incumbent on the defendant in error to prove; and secondly, whether he has proved it. The elements of the action are malice and the want of probable cause. In the celebrated case of Johnstone v. Sutton, 1 T. R. 493, 545, the essential ground of the” action was declared to be that the proceedings complained of were had without a probable x'cause, inasmuch as from the want of such cause the other main ingredient, malice, may be, and most commonly is implied ; whilst from the xiroof of express malice the want of probable cause cannot be inferred. That was the case of an action for a malicious prosecution before a court martial; but there is no material difference between such actions and actions for the malicious jirosecution of civil suits in respect of the grounds on which they rest.
In the case of Manns v. Dupont & al., 3 Wash. C. C. R. 31, probable cause is said lobe “a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in his belief that the person accused is guilty of the offence with which he is charged.” In Hare & Wallace’s notes to this case, 1 Amer. Lead. Cas. 213, the annotators select this as one of the best definitions of the term that has been given. Modifying the definition so as to adapt it to such a case as the one before us, we may, I think, properly define justifiable probable cause in cases of the kind to be, a belief, by the attaching creditor, in the existence of the facts essential to the prosecution of his attachment, founded upon such circumstances as, supposing him to be a man of ordinary caution, prudence and judgment, were sufficient to induce such belief.
It is true, that in the case of Mowry v. Miller, 3 Leigh 561, Judge Tucker, in delivering the opinion of the court, said, that as no man can maintain an action for malicious prosecution, where there was probable cause, it was obvious that those words should be made to refer to the state of fact as it respects the person prosecuted, and not to the degree of knowledge of that fact in the x>arty prosecuting. It will be perceived, on a reference to the case, that the action there was against the defendant for having procured a third person to institute a malicious prosecution for felony 'x‘against the plaintiff. There was a demurrer to the declaration ; and Mr. Stanard, in the course of his argument, had endeavored to show that the declaration was defective in that, according to Ihe fair meaning of its allegations, it did not allege that the defendant, without probable cause, advised and procured the prosecutor to institute the prosecution, but that he advised and procured the prosecutor, without probable cause, to institute it. The judge, in his notice of this objection, had already shown conclusively, by a reference to the declaration, that the objection was without any sufficient foundation, inasmuch as the charges of malice and probable cau.se stood, in the declaration, in connection, not only with the institution of the prosecution, but with the agency of the defendant in averring and procuring it. The proposition of law under consideration, subsequently stated by him, was, therefore, obviously, in his view, not essential to the decision of *858 the case, and we may hence fairly conclude, was not weighed with the same degree of care that he would have bestowed upon it had he taken a different view of the true meaning of the declaration. No case was cited by the learned judge in support of the proposition; and carried out to its full extent, it is opposed by the current of authority, and is, as I conceive, clearly inconsistent with the true theory of such actions. To refer the question of probable cause exclusively to the state of fact as it respects the person prosecuted, would be in effect to allow a party sued for a malicious prosecution to say to the plaintiff, by way of defence, “it is true you are innocent of the offence with which you were charged, and at the time of instituting the prosecution I knew of no circumstance to justify me in believing you to be guilty, and did not so believe, but I have since ascertained that there existed at the time certain facts and circumstances, *which, had they been then known to me, would have warranted me in believing you guilty.”
The law, in departing from the ordinary rules of pleading and proof, and imposing upon an innocent man, wronged bjr a criminal prosecution, the burden of negativing probable cause as the foundation of the prosecution, does not proceed upon the idea that he is in fault in having become an object of suspicion, but upon considerations of public policy, requiring to some extent a sacrifice of private rights. Crime would often go unpunished for the want of some one to set on foot its prosecution, if the prosecutor was in all cases to be held bound to make good the charge; and it is thought to be better that innocent men should sometimes have to submit without redress to the hardship and injustice of being falsely charged with crime, than that the members of the community should be deterred from the exercise of a proper diligence and activity in bringing offenders to justice, by the fear of exposing themselves to suits by persons prosecuted upon appearances of guilt which turn out to be fallacious and deceptive. No considerations of the public g'ood, however, can require that the partial denial of redress to innocent men falsely charged with crime, on the one hand, or the protection to those who honestly engage, upon reasonable grounds, in the prosecution of supposed offenders, on the other, should be extended to the case of an innocent man visited with the evils of a criminal prosecution instituted against him by one having at the time no belief in his guilt, and ignorant of any circumstance calculated to produce such belief. Accordingly, the cases are, generally, found holding that probable cause consists in the concurrence of belief of guilt with the existence of facts and circumstances, sufficiently strong to warrant such belief; or, in other words, that probable cause is, substantially, ^belief of guilt founded on reasonable grounds. Cabiness v. Martin, 3 Dev. Law R. 455; Ralston v. Jackson, 1 Sneed’s R. 128; Hall v. Suydam, 6 Barb. S. C. R. 83; Foshay v. Ferguson, 2 Denio R. 617 ; Siebert v. Price, 5 Watts & Serg. R. 438; Faris v. Starke, 3 B. Monr. R. 4; and cases cited in 1 Amer. Lead. Cas. 213-14.
Applying these principles to the facts of the case, it is difficult to conceive how the jury could well have rendered anjT other verdict than the one they gave.
The leading facts of the case are, that Davy had contracted with the Manassas gap rail road company to build the abutments and piers of a bridge across the south branch of the Shenandoah, abutting, on one side, on the lands of Spengler: that he had lived in Warren county about eighteen months before the suing out of the attachment, and that he had been at work on the bridge from February 1853 to the 26th of December 1853, say ten months; during which time he boarded with Spengler, the plaintiff in error: that he employed a large number of hands, and in the months of November and December had forty-two hands at work on the bridge: that he had received from the company, a few days before the 26th of December, a' large estimate on account of work on the bridge, the exact amount of which was not known, and that on that day he paid out to his hands who were present, about two thousand dollars, leaving something still due to some of them, of whom he asked at the time whether the amounts severally paid to them would do; that he paid nothing to Spengler, or Richards, or Massie (who also took out attachments) at that time, neither of them being present: that on the same day he went to Winchester on his riding mare, carrying with him most probably no other property or money than enough money to pay his expenses, stating to his manager (the witness), about the time of leaving, that he was going to Winchester *to purchase steel: that he left upon the lands of Spengler all the property afterwards attached, consisting of goods in a store-house, tools necessary for the prosecution of the work, &c. ; of the value of which we have no further proof than that it was sufficient to pay the amount of Spengler’s judgment, and that he had no other property in the state, unless something was due him from the company: that the wife of Davy at that time resided in Washington city, and that he always considered that place his home: that Davy was seen in Winchester on the day he left the work, by a witness, to whom he stated that he intended to return the next day; that on the night of the day just first mentioned, he was seen in Winchester by another witness, who states that at his request he accompanied him to two hardware stores to purchase steel, but that Davy declined buying, saying that he could get it in Alexandria at a lower price, and would purchase there: that there was a considerable fall of snow the same night, but whether it had fallen before the occurrences stated bj7 the last witness, is not shown: that on the 2d of January after the holidays, and after the *859 snow had abated, the manager of Davy went to work on the bridge with twenty-fivé hands, and continued at work till the 9th of January, when Spengler’s attachment was levied: that on the 17th of the same month Davy returned, bringing the mare on which he had ridden off: and that after some interruptions to the work, caused by the levy upon the tools and other property, and their subsequent sale, the prosecution of the work was fully resumed in February, and continued by Davy and his hands, till it was completed in October 1854.
It was further proved, that up to the time of the suing out of the attachment the credit of Davy was good, and that he was regarded as a man of integrity.
It was also proved by the manager of Davy, that *shortly before the suing out of the attachment, Spengler came to him and enquired whether he or the clerk or any of his hands had heard from Davy, and also whether he had ever known Davy on any other occasion to be so long absent from his work; and that in reply he informed Spengler that Davy had not been heard from since he left, so far as he knew ; but that he supposed that owing to the snow Davy had supposed that the work would be suspended for a while, and had gone to Washington to see his wife; that he had known him once to be absent for three weeks whilst engaged on another work in Warren, and that when he then left he requested the witness to attend to the work in his absence for him, and did not fix any time for his return.
It was also proved by one of Spengler’s witnesses, that he lived at Spengler’s house at the time of the suing out of the attachment, and for some time before; that he had frequently heard Davy complain that he was not making any thing on the work, and wished he was away, and he seemed to be out of humor with the place.
No witness gives evidence of any other fact or any other declaration by Davy than what is disclosed in the foregoing statement, tending in any degree to show a purpose on his part to remove his property. It was all left on the premises of Spengler; and there is an entire absence of proof going to show that Davy had made any attempt to carry it away, or to sell it or assign it. The fair inference from the facts is, that the estimate he received was fairly distributed out amongst his hands, according to their claims and wants; and that he contemplated the faithful prosecution and completion of the important work on which he was employed, was to be presumed from the fact that, after the slight interruption to its progress occasioned by the holidays and the fall of the snow, his manager had ^resumed the work with a strong and sufficient force, and was actively engaged in its prosecution at the time the attachment was sued out.
That it was not an unusual thing for Davy to absent himself from the work on visits to Washington, is directly inferrible from the statement of one of the witnesses, that his usual mode of traveling to Alexandria and Washington was by the rail road, which was completed to a point within six miles of the bridge; and when it is considered that Davy boarded with Spengler, and that the latter could not well be ignorant of the fact that his wife resided in Washington, it is difficult to conceive why, unless he was too ready to indulge in suspicion, he should not, on a view of the facts before him, have been satisfied with the very reasonable manner in which the absence of Davy was accounted for by his manager. I can see no ground on which Spengler could have reasonably founded a belief that Davy had removed or was about to remove his effects so as to endanger the collection of his debt. In the absence of such ground, the jury had a right to infer malice; which in such cases is to be understood in its legal sense, and not in its popular signification of anger, malevolence or vindictiveness. The improper motive or want of proper motive inferrible from a wrongful act based upon no reasonable ground, constitutes of itself all the malice deemed essential in law to the maintenance of the action; and the most charitable construction of Spengler’s motives in suing out the attachment that can be given, is, that he acted upon slight circumstances of suspicion, inducing an unreasonable solicitude, on his part, for the safety of his debt, and a corresponding want of consideration as to the serious and irreparable wrong which his harsh proceeding was calculated to inflict upon the credit and other interests of his debtor.
The proposition advanced in the course of the argument xhere, that Davy was precluded by the judgment on the attachment from showing that Spengler had no reasonable ground to believe that he was removing or had removed his effects, &c., is met by the answer that no objection was made to the introduction of any of the evidence in the court below. Davy did not return till after the judgment ag'ainst him for the debt claimed had been rendered, and an order made for the sale of the attached effects.
If, upon the rehearing of the case, irregularly obtained upon his petition, it was competent for him to have gone into the question whether the attachment had been founded on reasonable grounds (about which I express no opinion), it appears no such issue veas tried or tendered. On the trial the plaintiff in error, if he could have relied on any estoppel, failed to do so, and there seems to have been a free, fair and full trial on the merits.
As to the objection that Davy was entitled to recover no damage growing out of the sale of his property, as he failed to stay the sale by giving bond, it seems to me sufficient to say that, supposing it competent for him to have pursued such a course, and that it was within his power to give such bond, he was not bound to give it. His action proceeds on the ground that the suing out and prosecution of the attachment were wrongful and malicious. The plaintiff in *860 the attachment was acting- at his own peril, and cannot be heard to complain that the defendant did not hinder him, in the sale which he was seeking to have, by compljT-ing with the onerous condition of giving bond and security to pay the judgment. Besides, the loss occasioned by the sale of his propert3r was but an item in Davy’s claim on account of damages, and the whole question of damage was fully before the jury.
I can see no ground for interfering with the verdict of the jury on the alleged ground of excessiveness. *The law has not, and from the nature of things, cannot set up any precise standard by which the damages are in such cases to be fixed and ascertained ; and the space is necessarily broad, within the limits of which the court must accept the verdict of the jury as the true and only measure of damage. In this case, the verdict is not so heavy as to induce the belief that the jury have been in any degree influenced by prejudice or passion.
The declaration in this case is irregular, in that it charges that the attachment was sued out wrongfully and without good cause, instead of maliciously and without probable cause; and doubts have been suggested since the argument of the cause, whether this irregularity is cured by the verdict. In the case of Ellis v. Thilman, 3 Call 3 (which was a case for a malicious prosecution), the allegation was that the prosecution was malicious and -without any just cause. In the case of Young v. Gregorie, Id. 446 (case for the illegal suing out, &c., of an attachment), it was alleged that the proceedings were had maliciously and without any legal or justifiable cause. And in Kirtley v. Deck and others, 2 Munf. 10 (case for a conspiracy in preferring, &c., a malicious prosecution for a felony), the allegation was that the defendants falsely and maliciously conspired, &c., to prefer a false and malicious prosecution, &c. ; but there was no averment that the prosecution was without probable cause. In each of these cases, it was held that the declaration was radically defective, and was not cured by the verdict. In these cases, it -was said that the words without probable cause, or some equipollent expression, were essential to make a good declaration, and it was held that the words without any just cause, in the first mentioned case, and without any legal or justifiable cause, ill the second, could not be received as equivalents for the words which the law required. It is to be observed, however, of all of these cases, -x'that they were decided in the absence of some of the most sweeping of the provisions of our present statute of jeofails, and more especially of that which declares that no judgment after verdict shall be stayed “for any defect whatsoever in the declaration or pleading, whether of form or of substance, which might have been taken advantage of bjr a demurrer, and which shall not have been so taken advantage of;” which was first introduced at the revisal of 1819; and was re-enacted in 1849, with slight modifications, not necessary to be here noticed. See Code of 1849, p. 680.
It is true, that broad and comprehensive as is the language of the provision, this court has felt called upon, on several occasions, to set some limits to its operation, and to declare that there are some defects in declarations which are beyond its cure. Still it will be seen, on a reference to the cases alluded to, that none of them can be used as precedents for excluding this case from the benefit of said provision. The first of them (in order), Mason v. Farmers Bank at Petersburg, 12 Leigh 84, was the case of a suit by the plaintiff against the president and directors of a branch bank, in which the declaration complained of them as “the president, diréctors and company of the office of discount and deposit of the Farmers Bank at Petersburg. ’ ’ This court held, that no judgment could be rendered, as the declaration was against parties who could not be made liable to any action. There was no such corporation in existence. The declaration plainly showed that the cause of action was against the “president, directors and company of the Farmers Bank of Virginia.” In the second case, that of Ross v. Milne and wife, 12 Deigh 204, the declaration plainly showed that the plaintiffs had no cause of action,- and that the right demanded was in a third person. And in the third case, that of Boyle’s adm’r v. Overby, 11 Graft. 202, which was a suit against an admin-istrator *for an alleged cause of action against his intestate, the declaration alleged a cause of action which from its very nature must have died with the person of the intestate.
In neither one of these cases was there any room for the inference of facts, supplementary to and consistent with those alleged by the plaintiff, that could make out a good cause of action. In each, case, the allegations of the plaintiff showed affirmatively that he had no right to recover.
The distinction between such cases and the one in hand, is too marked to require comment. Proof that the attachment was prosecuted maliciously and without probable cause, would be entirely consistent with the allegation that it was prosecuted wrongfully and without good cause; and it might well be that the very same testimony relied on to establish the latter'allegation, might furnish sufficient proof of the former also.
I am free to confess that I have not been able to bring my mind to a conclusion entirely satisfactory as to the precise scope of the provision under consideration. It seems to me, however, that if the present case were to be excepted out of its operation, it would be a very difficult task to say at what point such exceptions should stop. The case is plainly within the letter of the statute; and I can see no sufficient reason for supposing that it is not within its meaning; whilst I am entirely satisfied *861 that the case has been fully tried and justly decided on its merits. The supposed defect does not appear to have been, in any manner, brought to the notice of the County court; it is not assigned as one of the causes of error in the petition for a super-sedeas to the Circuit court; nor in the petition to this court; nor (if noticed at all) In the argument here, was it insisted on as a ground for arresting the judgment.
Under these circumstances, it seems to me that the *just and proper mode of disposing of the question is simply to read and administer the law in respect to it as it is written, leaving to the court, on vsome future occasion, when aided by the arguments of the bar, the task of ascertaining and setting out with more fullness and precision than has been yet attempted, the exact meaning and limits of the statute.
I see no error in the judgment, and am for affirming it.
The other judges concurred in the opinion of Daniel, J.
Judgment affirmed.